will now drown here. Keep your attention and you will be heard. God save the United States and this honorable court. The first two cases are argued cases. First one is Rojas Chavarria versus Blanche and we've got one person appearing by video. When you're ready, counsel. The clock counts down, so you keep track of your time. I would like to divide my argument into two major parts. The two issues were not waived and appealed with the Board of Immigration appeal. One is one of the particular social groups, which is the person who witnessed murder committed by persons associated with Peruvian government authorities and who is subject to retaliation if he returns to Peru. And second, the political opinion of the petitioners. So on the first point... You have limited time. Let me make this suggestion. Stick to political opinion. Okay, thank you. In that case, your honor, I would like to say that on the political opinion, what my clients experienced was clearly related to their political opinion. There is a few cases that were cited in a Board of Appeals brief that one of them made Rodrigo Zuniga versus Garland that says that simple extortion does not equal to the political, to be in a protected ground. However, in our case, it is not just the extortion. Our clients, my clients, both adults, petitioners in this case, they suffered crimes perpetrated by them. They suffered harm exactly because they were expressing political opinion. What's the evidence that what happened to your clients was based on political affiliation? They had political advertisement posters on their boards. They had a business truck and they had advertised the party that they are affiliated with, the Fuerte Popular. And the people who harmed them, the gangs who were affiliated with the government were supporting other party, Peru Libre. And they, against my client's will, they wanted to put special posters on the walls. And when our clients refused, the harm started. The dog was killed. One of the petitioners was punched in the mouth, the female. Was there any harm because of the punch in the mouth? She still has a chipped tooth. A chipped tooth as a result of that. Correct. Also, her brother was shot in the head because he went, he had a close resemblance to her husband, Alex Maza. He was shot in the head. And also their house, their business was set on fire. And that happened after they already left the United States. So that's the specific harm they… And when the business was set on fire after they left for the United States, who was running the business at that time? Was it still connected to them in some fashion? It was. It was her brother-in-law who took over the business after that. So it was still a family-run business, same family? Still a family-run business, correct. And it is our position that basically the main case that speaks to our point is Navas versus INS that says that inquiries where the persecutors believe the victim held a political opinion, it targeted them and persecuted them because of the political opinion. Sure, the extortion claims were there as well. However, it is our position, mainly because of political opinion, our clients suffered harm. And so what's the standard as to what proportion of the causation is the political basis? It's like a percentage of… It's not clear from the case law that I read at least. Well, it's either got to be a central reason or the central reason, depending on which one we're talking about, asylum or… Always hold everyone. So why is it… So you have to show that the reason was pretty important. Why was that reason particularly important instead of just contributing? Sounds as though this gang was extorting money from everybody. Correct. However, the harm that my clients suffered, it extends beyond what other people suffered. It was an inter-gang wars there, too, and Trenarango gang and Los Rusos, they were like sometimes they were together, sometimes they were shooting each other and that's when my client witnessed the murder. But the male adult petitioner, the husband, Alex Maza, he was a very firm supporter of Fuerza Popular. And the Los Rusos who extorted money from them, they were very fierce supporters of Peru Libre. It sounds as though this gang is willing to shoot people who don't give them money. That is to say, apparently one of the neighboring businesses, somebody was shot when they didn't give money. And as far as I can tell from the record, there was no political issue on that one. They just didn't give money and so they killed him. It is unclear to us. Unfortunately, it was not part of the record. I was the attorney of record and perhaps I should have asked that question if my client knew. But as far as we don't know, maybe it was the political opinion as well for that person who was shot. I want to follow up on Judge Fletcher's comment. We, as I'm sure you know, get lots and lots and lots of cases where basically you've got gangs that want money. And that's what they're after. Political opinion plays virtually no role in this. What is your best argument on the substantial evidence basis that suggests that the attack here was politically motivated and not financially? It was both. It was both. But I believe out of all the community, my clients are the only ones who left and they were the ones who actively protested. At first, they even paid the gangs, but then they stopped because they just wanted to stand up for their reasons and for hoping that the things will change because when during the time they suffered harm, it was the opposing party led by the mayor of Lima, capital of Peru. Liberia was led. So was I mean, the city was controlled by and that's why the gangs ran around and it was just a total chaos and criminals just right. Focus in a little bit. Yeah, correct. Sorry. What this case is about. Just sorry. Bear with me. And you tell me if my impression of the record is wrong. There was a political party controlled by this criminal group. Correct. Correct. They were in control of it. And your clients ran a business that allowed the opposing party to put advertisements, give political speeches, et cetera, either at the business or on their business truck. Am I correct about those things? They allowed it first, but they that's that's the reason that all the problems started. Your argument, your thesis is that this criminal group, which controlled the opposing political party, use their violence to impose their political will. That's what you're arguing, right? OK, it is. Thank you. And so, yeah, sorry, I wasn't clear. So by trying to change things, by trying to support the other one, the other party, where it's a popular our clients hope that things will change in Peru. I mean, in Lima specifically, but all over the Peru that, you know, if the where it's a popular leader would be mayor, this would stop this. This is the chaos that loneliness would stop. So that would be basically my argument. I only had 30 seconds. I want some. Why don't you save your 30 seconds and we'll give you a little more time than that to respond. Thank you. Thank you. Yes. Thank you. Thank you. May it please the court now see more on behalf of the attorney general. And I'm also going to take your honors advice and turn right to political opinion and simply put the record does not compel the conclusion that the petitioners established a nexus between the claimed harm and any alleged political opinion. The INA makes motive critical and the focus is on persecutory intent here. Petitioners had to show that they held or that the persecutors believed that they held a political opinion and that the gang persecuted them because of that. And they failed to meet their evidence. They had to show that they believed the political opinion, but rather that they were showing posters that had a political opinion and because they were showing posters that had a political opinion and refused to do the others, that that was a motivation for what they did. I don't think I don't think they have to show belief in political opinion on the part of the petitioners. Forgive me if I misspoke, Your Honor. I meant to say that the petitioners had to show that the persecutors believed they had a political opinion, not that they had a personally held political opinion. OK, if if we accept our window. That there was past persecution in this case, is there not a presumption of the likelihood of future persecution and that it should go back to the BIA to consider that? The the rebuttable presumption would only come into play were they able to prove past persecution on account of a protected ground. So although there's no dispute here that the harm rose to the level of persecution because they have failed to establish the requisite nexus, they do not benefit from that presumption and there is no need to send the case back. Because there was no protected ground action. Correct, Your Honor. It's pretty clear from the narrative that we can infer some contribution to the motivation from the political ground. Question is, how much is the contribution? How do we assess the sort of the degree of contribution? The government's position is that the there is no evidence that the gang was motivated to harm petitioners based on a political opinion, and instead they were initially targeted for extortion and in order to exert their influence over the general population. So a matter of percentage of how much the petitioner's political opinion factored in is in opposite in the government's opinion because there is no nexus to any protected ground in this case. Well, let me let me ask you this. Is there any evidence in the record that the petitioners in this case were harmed in any way prior to the display at their business of opposing party political paraphernalia? The petitioners were not harmed because they complied with the gang's demands. This is a time question. Please focus on it. Is there any evidence in the record that any harm befell the petitioners prior to the time that they allowed opposing party political paraphernalia to appear at their place of business? The answer is yes or no. No, Your Honor. OK. However, the only time that they were harmed or in the threats increased were after they defied the gang's authority and refused to comply. It was not on account of political opinion or any other ground. It was purely based that they refused to comply to. They refused to take the stuff down. Right. Respectfully, no, Your Honor. They stopped paying the quote unquote rent, the extortion tech. No, the evidence in the record is they paid intermittently beforehand. So they already stopped from time to time. And I think Judge Hawkins is right that the actions complained of took place only after we had the contraton as to whether or not they were going to display the signs of one party or the other. Isn't that right? I think that's in the record. Yes, they did take down the political paraphernalia, but that doesn't reflect a political opinion per se. The timing is correct, Your Honors, but the government's position is that their decision to take down or not put up particular political paraphernalia or to stop the extortion that they were being subjected to is not a sufficiently conscious or deliberate action such that society would naturally attribute a certain political opinion to them. Instead, the wife, for example, was frustrated to the damage to the building, and that was when she was physically harmed. And when they stopped paying the extortion tax, the threats increased. And when the petitioner witnessed the murder and was threatened not to talk to the police about the murder, that had absolutely nothing to do with his political opinion or any other protected ground. And instead, the idea that is supported by substantial evidence in the record that they were targeted as a business and as a way for the gang to further their criminal objectives is supported by petitioner's own testimony, wherein they say that the gang wished to keep control of the community and that they wished petitioners to be flexible and let them put their political paraphernalia on the wall. At no point do they mention petitioners' alleged political opinion, and there's nothing in the record to suggest that petitioners held one or otherwise were known in society as being active supporters of any such party. What is the government's best argument that petitioners here were not persecuted because of their political opinion? The best argument would be that at the risk of being repetitive, that the harm increased and the threats they received only occurred when they stopped complying with the gang's demands. And thus, it is an unfortunately common case where they, because they were no longer complicit and doing what the gang was telling them to do, there was retribution. But a general fear of crime or retribution is well established to not be sufficient to prove eligibility for relief. And here, this case is no different than that. They stopped doing what the gang asked, and then they faced harm. So from the government's perspective, this is an easy case. It's just criminal activity. Political opinion has little or nothing to do with it. That is correct, Your Honor. I, with my remaining time, would start to discuss the socially distinct aspect of the only putative social group that's on review if the court is interested. Otherwise, I can provide a conclusion if there are no further questions. I don't have any questions. No, I'm fine. Thank you. So in conclusion, the record does not compel reversal of the agency's decision to deny petitioner's request for asylum, withholding a removal, or a cap protection. And accordingly, the court should deny the petition. Thank you for your time. Thank you. You saved a little time. Why don't we put two minutes on the clock? Thank you, Your Honor. I actually, I don't think I have that much to add, but I will just briefly say what came up during the opposing counsel's argument. The timing, I think it is important, the timing, because how it was in the timeline. They first paid, then they stopped. And then this whole thing happened with advertising the political party. And that's when the real harm started. And in between, they, I believe the record reflects they still made couple payments, still two. And they were still, they were still targeted politically. And then after the most confrontation when the wife was punched in her mouth for defying to, for refusing to take the political advertisement of the opposing party down. That's when, you know, the harm intensified. That's when her brother was shot because the brother who was shot was presently, he started defending her. So, it is our position that it's mostly for political opinion they were targeted, not for the extortion. And to the second point that we really didn't discuss here and I understand why. I believe that the main petitioner witnessed the murder. It also adds to the fact that the gangs that are backed up by government and was part of the record would look for him. And I don't think he can hide anywhere in Peru. He's a transnational organization. So, in conclusion, we ask him to respectfully ask him to review this one more time. Thank you. Okay. Permit me a couple of quick questions.  Yes. Do your clients speak English? They speak, no, they speak Spanish only. And what is your primary language? It's Russian. So, it's very kind of because Los Rusos are the ones who, yeah, mine is Russian, but I do have an interpreter and I speak Spanish. But when I say, you know what I mean. Of course, I do. Por Pajalsto. Pajalsto. Thank you. Nice to meet you. Okay. Thank you, Honor. Thank you. Thank both sides for their helpful arguments. Thank you, opposing counsel. The case of Rojas Chavarria v. Blanche is now submitted.
judges: HAWKINS, FLETCHER, SMITH